Bosworth, Ch. J.
If the appellant was entitled to a credit for the just value of any of the services, rendered by him for the plaintiff, which are set up in the answer, the judgment is necessarily erroneous.
In the answer they are set up “ as a counterclaim,” and $1,500 is alleged to be their value, and a judgment of $1,500 as their value is prayed. That the pleading is so defective in form that a motion that it be made more definite and certain would have been granted, may be conceded for the purposes of the present inquiry; and yet it will not follow that the appellant should not have been permitted to prove the matters alleged, and have been allowed the sums established by the evidence to be just.
Ho motion was made, under section 160, to make this part of the answer more definite and certain; nor was the sufficiency of it tested by demurrer under section 153 of the Code. On the contrary, the plaintiff replied to the allegations contained in this part of the answer, and replied to them as purporting to set up a counterclaim.
On such a state of facts, it seems to us that we cannot avoid enforcing against the plaintiff the rule stated and applied in *460 Seeley v. Engell, (3 Kern., 548, [II.;]) that, having omitted to move, under section 160 of the Code, “ and especially by replying as though he understood what was intended to be set up, he was precluded from objecting to the evidence on the trial.”
The Referee, at one stage of the trial, seems to have acted upon this principle; for, although the plaintiff objected to the admission of the evidence, the Referee overruled the objection, and admitted it.
This decision being in favor of the appellant, he is entitled, for the purpose of determining the question whether he shall have a new trial, to have that decision treated as being correct. (Rogers v. Murray, 3 Bosw., 357-365.)
Unless, therefore, upon facts found correctly, (in the sense that they are sustained by sufficient evidence,) the Referee has rightly held that the appellant is not entitled to setoff or counterclaim the amount of a just compensation for his services, on the ground that he has forfeited all right to be paid anything for them, the judgment is necessarily erroneous.
The Referee has found, as a fact, that the appellant “ had rendered various legal services for the plaintiff” in eight several matters which he specifies, besides his services “ in relation to the said four houses and lots” which are the subject of the plaintiff’s action; and he holds, as a conclusion of law on all the facts found, that the appellant “ has forfeited his right to be compensated for any of them.”
On what principle he has forfeited his right to compensation for any of his services except those in relation to said four houses and lots, or except in relation to the matters and proceedings in which he had violated, or in bad faith had failed to perform his professional duty, was not suggested to us on the argument of this appeal. But the respondent’s counsel, as we understood him, did not contend for a rule that would make professional infidelity in one suit work a forfeiture of the right to compensation for meritorious services honorably performed in another.
The Referee, therefore, assuming the facts found by him to be warranted by the evidence, could not justly, upon any recognized rule of equity, disallow a just compensation for services rendered in suits and proceedings disconnected from the appellant’s alleged *461 employment and undertaking, to attend the sale of the four houses and lots by the Sheriff, and protect the plaintiff’s interests in respect thereto, “ and to procure the title of said lots for the plaintiff.”
The complaint alleges a contract between the plaintiff and the defendant, by force of which he was to bid in the four houses and lots at a Sheriff’s sale of the same, to protect the interests of the plaintiff as the owner of the equity of the redemption thereof, and to redeem the same for the plaintiff’s benefit; and that although he had perfected the legal title in himself, yet that in equity, if not in fact, they were redeemed by the plaintiff, and that he is entitled to a conveyance thereof; and prays as relief that the appellant and his wife be adjudged to convey the same to him ; that the appellant be also adjudged to pay all damages which the plaintiff has sustained by reason of the “ negligence, fraud and acts ” of the appellant in the premises; and that the appellant “ be required to come to a true and just accounting with the plaintiff of and concerning the moneys and securities aforesaid, which he had of has of and for the use of the plaintiff, and pass over the balance that may be found due.”
“The moneys and securities aforesaid,” referred to in the prayer for judgment, were, as to most of such moneys, collected and obtained through the services of the appellant as the attorney and counsel of the plaintiff, in suits or proceedings in his behalf against third persons, and upon all just principles of accounting in respect thereto, the appellant, while compelled to account for the amount so received, and for the amount of profit which the plaintiff will have realized from a just and equitable use or application of them, should be allowed such sum as will fairly compensate for conducting the suits or proceedings in and by means of which such moneys were collected.
The action is founded on a contract alleged to have been made between the plaintiff and the defendant, and the Referee has not only found that it was made, but has found, what the complaint does not allege, that the appellant was employed “ to procure the title of said lots for the plaintiff.”
The Referee has also found as facts, that certain specified acts of the appellant “ were fraudulent towards his client, the plain *462 tiff, and a breach of the duty of the said Cowles, as such attorney and counsel.”
The Referee has not otherwise or in other language found, as a matter of fact, that the appellant actually intended to defraud, or that he actually intended to be guilty of a breach of known or conscious duty.
In Hawley v. Cramer, (4 Cow., 744,) the rule, in an analogous case, was held to be, that, where the estate has been sold to a bona fide purchaser, so that the party equitably entitled to it, or to the proceeds which might be realized from a resale, cannot reach the same: the defendant shall be compelled to account for all that he has made by his disposition of it, and must pay interest on the profits realized.
In the present case the Referee has given, or assumed to give, to the plaintiff the full value of the property at the time at which he holds the plaintiff’s equitable title became perfect, over and above what he should have paid to perfect such title, with interest on such value from that date.
He has, therefore, not charged the appellant with any amount which it is found, as a fact, that he had realized, but has made him a purchaser at its then fair value, and charged him with that sum and interest, or has assumed to do so. But, in Hawley v. Cramer, (supra,) the Chancellor, although he held the sale complained of, and which was made through the agency of an attorney at law, a fraud upon the complainants, and the attorney a party to such fraud, yet, while he gave the complainants their proportion of the sum obtained on a resale of the property made by the purchasers at such fraudulent sale, also allowed to such attorney, not only his costs of the suit, but the moneys paid by him to the Sheriff for his fees upon the sale adjudged to be fraudulent, and, in making which, such attorney was adjudged to have been guilty of a breach of duty to the complainants, as their attorney and counsel. (Id., 745, 748.)
In Van Epps and Wife v. Van Epps, (9 Paige, 237-242,) the defendant was held to be a trustee for the complainants of property which he had attempted to buy for his own benefit, on the ground that he had a duty to perform in respect to such property inconsistent with the character of a purchaser thereof for his individual use and benefit. But, at the same time, the defendant *463 was protected in respect to the amount of his bid; and it was adjudged to be equitable that he should hold it as security for that amount.
It has been long settled that an attorney or solicitor, who recovers a judgment for his client, is an equitable assignee of it to the extent of the sum due to him for the costs of recovering it; and that he has a lien on his client’s papers for services, even where there has been no suit or judgment against another party. That rule has neither been abrogated nor impaired by the Code. (Rooney v. Second Av. R. R. Co., 18 N. Y. R., 368.)
And it has been held that, where a solicitor was transacting business for his client, and had, at the same time, a judgment against him, bearing interest, and the client made general payments from time to time, the solicitor was justified in applying those payments to his account for costs accruing due, although the interest on the judgment against his client was accumulating at the same time, (D'Arcy v. Burke, 2 Irish Eq., 1;) the payments, when made, not being impressed with a direction or duty to apply them otherwise.
Any amount justly due to the defendant for his services in the matters enumerated in his answer, should have been allowed as an equitable defense, to that extent, to the plaintiff’s cause of action. An equitable as well as a legal defense may be interposed, and a counterclaim may as well consist of a right to equitable relief; as of a cause of action on which a recovery can be had in a Court of law. (Code, § 150.)
These views lead us to the conclusion, that the Referee fell into an error in holding, that the appellant had forfeited all right to be compensated for any of the professional services which he proved he had performed for the plaintiff, and that a new trial must be granted.
We also deem it proper to state, that a careful perusal of the evidence has failed to convince us, that during the fifteen months next subsequent to the Sheriff’s sale of the four houses and lots, there was any want of good faith in what the appellant did or omitted to do; and we see in it no evidence of any intent to defraud.
It is undeniable, that the plaintiff knew the appellant was the attorney of the Housatonic Bank, and that the sale was to be *464 made at Ms instance as such attorney. The latter, as soon as the sale was made, wrote to the plaintiff that the sale had taken place, and that he had Md in the property for that Bank. The plaintiff admits the receipt of that letter, and makes it a part of Ms complaint.
By letter dated the 25th of February, 1854,- the appellant solicited a power of attorney from the Bank, authorizing him “ to bid up the property,” and promised to so manage, that the lands should not ultimately fall into their hands.
In answer to that application, the Bank sent Mm such a power of attorney, enclosed in a letter dated the 25th of said February, and on the 28th of February, a month prior to the sale, he wrote to the plaintiff thus, “I have full.power from the Housatonic Bank, to bid on the sales. Will attend them and look out for you.”
Hence, it is quite evident, that prior to the Sheriff’s sale, the plaintiff knew that the appellant would at such sale bid in the property, if he deemed that course best; and that if he did bid it in, it "would be nominally for the Bank, and that all the protection the plaintiff could have, would be found in redeeming from such sale, or taking the title that might be perfected under it.
The appellant’s letter of the 12th of March, 1855, to the plaintiff, indicates that his view of what was most for the interest of the plaintiff was, that the title should be perfected under that sale. He says: “ the Sheriff’s deed is not due until the last part of June, although the owner has to redeem in twelve months. I shall of course let you have it at the end of the fifteen months.”
We find nothing in the evidence leading us to doubt, that he then intended to do as he stated in that letter. He of course expected tobe paid for Ms services, and if not previously furnished with funds sufficient for the purpose, that the plaintiff would supply the requisite amount to pay the sums at which the lots had been bought at the Sheriff’s sale, including interest thereon.
And if, at the end of the fifteen months, he had presented an account of his services just in amount, including the moneys to be furnished in addition to those in his hands and necessary to be paid to effect a redemption, and had offered to convey the houses and lots to the plaintiff on being paid the amount due him according to such account, he would have offered all that *465 in. any view could be demanded as equitable, and nothing would have existed to excite the slightest suspicion of bad faith, or illiberality.
The bulk of the moneys which the appellant received or collected for the plaintiff before the expiration of said fifteen months, were received between the 27th of January and the 5th of June, 1854, inclusive. The bulk of the appellant’s disbursements for the plaintiff were made between the 1st of February, and the 28th of June, inclusive, of the same year.
From the 7th of April to the 1st of May, 1854, the appellant had advanced about five hundred dollars, more than he had received or collected, besides being uncompensated for the services which the Referee has disallowed.
On the 28th of June, 1854, the receipts and collections amounted, over and above the payments he had made, to $1,399 52 On the 27th or 28th of September, 1854, he received
the further sum of............................ 206 88
Total,............ $1,606 40
He received no other moneys for or on account of the plaintiff until the 12th of September, 1855, some two and a half months after the expiration of the fifteen months next succeeding the Sheriff’s sale. On the 29th of September, 1855, he received notice from Messrs. Fancher and Eager, that they had been retained to commence this suit.
A just mode of stating the accounts between the parties would be, to ascertain what was justly and equitably due to the appellant for his services in June, 1854, and allow him to apply that in payment of a like amount of the $l,399TV¡r, or if it exceeded that sum, then allow him to be paid the deficiency out of the $206.88 received on the 27th or 28th of September, 1854.
The only thing unreasonable on the part of the defendant (unless the amount claimed for his services was unjust) was, his refusal to convey to the plaintiff, unless first paid his claims against James Currie.
It was unreasonable and inequitable in the plaintiff to insist on. having a deed for the three houses and lots, without paying or securing to be paid, whatever might be justly due to the appellant.
*466 He may have thought the plaintiff’s charges were extortionate, and meant, if possible, to get the title to the houses and lots, and leave the appellant to such remedies for his compensation as he might be advised to pursue. And it is not improbable that the appellant believed that the plaintiff did not intend to make any compensation approximating to justice, if he could avoid it; that the property was at last going into the hands of James Currie, and therefore no great violence would be done to the principles of natural justice, if he used the power he then possessed to coerce payment from both.
Client and attorney, look at the services of the latter in a very different light. The former, generally sees only the results of the labor of the latter, and is ignorant of the care, vigilance and toil to which the results are due. The latter possibly, at times, overestimates the character of the skill that has been employed, the intrinsic difficulty of the questions he has investigated, the value of the responsibility he has taken, and the worth of the services he has rendered.
As a natural consequence the attorney sometimes thinks the client ungrateful and niggardly and that he intends to cheat him, when in truth he means to be just. And the client on the other hand thinks the attorney exorbitant in his charges, and extortionate, when the latter intends to be liberal, and really feels and believes that he is so.
I think there is much reason to believe that something of this feeling may have exercised some control over the views of the parties to this controversy, and that their conduct may be explained consistently with the absence of all intent on the part of either, to be mean or to defraud.
And on the evidence as it stands, we see nothing which should subject the defendant to a forfeiture of his right to a just compensation for any services he may have rendered. .
If the plaintiff has the right to have the defendant treated as his trustee of the property; the latter should be compensated for any services he may have rendered, within the intent and according to the expectation of the parties, in perfecting it.
The Referee, instead of decreeing a conveyance of the three houses and lots upon just terms, has given a judgment for dama-ges, on the ground that by reason of the foreclosure of a prior *467 mortgage on the three houses and lots, and a sale of them under such foreclosure, the plaintiff cannot be vested with the title.
We find no evidence in the case of any such fact. The Referee in his statement of the facts found by him, states “ that it was conceded on the argument on both sides that the said three lots had been sold since the said redemption day,” and that it was not in the power of the appellant to convey any valuable interest therein to the plaintiff.
The appellant excepted to this finding. The Case, in its statement of what occurred at the trial, does not mention that any admission to that effect, or that any such concession was made.
When the plaintiff offered evidence to prove such fact, the Referee, on the objection of the defendant, excluded it.
As the statement to be inserted by a Referee on settling a case, is to be a statement of facts found by him on the evidence contained in the case; and as the appeal from the judgment maybe “upon the fact” as well as “upon the law”; the evidence which is to justify the finding of facts, whether consisting of admissions of the parties, or of the testimony of witnesses, should be embodied in the Case, otherwise it may happen, that as to some material fact found, there may be no evidence to support it. (Code, §§ 268, 272, 348.) It is not the province of the Court at General Term, nor has it the right to deduce facts from the evidence brought before it, with a view to found a'judgment thereon. (Brower v. Orser, 2 Bosw., 365.)
The observations we have made in respect to our view of -the force and effect of the evidence brought before us by the present appeal are made in reference to the question of the right of the appellant to be compensated and allowed in this suit for the just value of the services which he may have rendered; and not with a view to control the conclusions on any future reference or trial, as to the actual intent of the defendant to benefit or overreach the plaintiff.
And we may add, in conclusion, that if the Referee found the true value of the three houses and lots, and was right in charging the defendant with such value, he erred against the plaintiff in not crediting him with the balance of the moneys in the appel-. lant’s hands; as well as in his favor by denying to the appellant, compensation for his services.
*468 It is to be presumed that he did not charge the appellant with the surplus in his hands, because he treated it as having been applied to redeem the three lots. That being so, and the appellant having sold them, he, of course, received that back from the purchaser, as well as the excess of their value over that sum and the prior incumbrances thereon. If chargeable with their value, on the principle that he has received it, he must refund the whole of such value, he not having parted with any money to pay the bids, or perfect the title.
The judgment must be reversed, and a new trial granted, with costs to abide the event.
Robertson, J.
The learned Chief Justice has so fully expressed my views as to any forfeiture by the defendant, Cowles, of any claim for services in reference to matters not immediately connected with the redemption of the premises as claimed by the plaintiff, that I need add nothing further. I think also we cannot inquire into the merits of the evidence in regard to those services, where all inquiry was precluded by the decision of the Referee. The case also is clearly one where, if the defendant, .Cowles, is chargeable with a sum of money, his claim is admissible as a counterclaim.
There is no pretense in the complaint of any design or scheme on the part of the defendant, Cowles, before he bid in the premises in question at a Sheriff’s sale, to get the title to them in his own name, lull the plaintiff into a false security by promises of redeeming them, induce the latter to believe that he would apply all the moneys in his hands, or which he might receive for the plaintiff, to such redemption, then allow the time for redemption to elapse and retain the title in his own name. Unless that be charged and proved, it seems to me, the obtaining of the title to the land in the defendant’s name, originally, so far as the plaintiff was concerned, was wholly immaterial to his rights in this action. Without such a premeditated scheme, the charges made against the defendant, Cowles, become isolated acts of malfeasance or breach of contract, for each of which, if they are the subject of an action, the plaintiff might recover, if he has sustained damages. Kor would this result be varied, if the facts alleged in the complaint and found by the Referee were *469 sufficient to warrant the inference of such a scheme, for in such case, those facts would be mere evidence of the main fact, to wit, the scheme to be found as a question of fact, whose execution produced the injury to the plaintiff complained of, and which he was bound to allege in his complaint. (Page v. Boyd, 11 How., 417.)
As one of such isolated facts, therefore, the complaint alleges that the defendant, Cowles, undertook and promised to attend the sale of the premises in question by the Sheriff, on the execution in favor of the Housatonic Bank, and to represent the plaintiff thereat, and fully protect his interests; in consequence of which the plaintiff did not attend such sale, and Cowles bid in the land in his own name. It is difficult to imagine what else the defendant could have done, or how he could any further have protected the plaintiff’s interests, or in what respect he failed to perform his contract, or was wanting in professional duty to his client, unless he bought the property in for him, instead of the Housatonic Bank. But there is no allegation of any authority given to the defendant to make such contract of purchase, nor were any funds furnished by the plaintiff to complete it, nor did the defendant agree to furnish the same, and it certainly was no part of his professional duty to make such advance. Besides this, it appears by the complaint that the judgment creditors, on whose execution the sale was made, gave the defendant a power of attorney to bid for them and protect their interests; and that on the next day he notified the plaintiff that he had bought in the premises for the Bank, and that the plaintiff was the redeeming party; that he had used his power of attorney from the Bank to help the plaintiff, and thereby probably delayed the'payment to them of from three to four thousand dollars, for some time. It is not alleged or proved that such course of the defendant was dissented from by the plaintiff, or was prejudicial to him, on the contrary, in a letter dated the next day, he says that the intelligence was “long hoped for and most gratifying ” ; thus, in the fullest manner, approving of his conduct. The omission of the plaintiff to attend such sale, alleged to have been brought about by the defendant’s supposed promise, appears for the same reasons not to have been attended with any injury to his interests, at least none is pointed out: and he *470 does not allege what he could or would have done if he had attended the sale. The Referee has found that the defendant, Cowles, as an attorney and counselor of the Superior Court of the city of Hew York, was employed by the plaintiff for securing and.collecting his claim against William and James Currie, and in furtherance of the same, to attend the sale of the premises in question on an execution issued by Cowles as attorney of the Housatonic Bank, and on such sale to protect the interest of the plaintiff, and to procure the title of said lots for the plaintiff; and further, that he undertook such business as attorney and counselor, and induced the plaintiff to believe that he would attend such sale for him, and do all that might be necessary to protect his interests in the matter, and carry out said understanding, and in consequence thereof the plaintiff did not attend the sale; and these are the only findings in reference to any original employment or undertaking of the defendant, Cowles, in reference to such sale, or as to any prejudice to the plaintiff arising from his non-attendance thereat. The Referee has, in such findings, found three facts not alleged in the complaint, to wit, that the defendant was an attorney and counselor of this court; that he was employed" by the plaintiff to secure and collect his claim against his brothers, and that he was to procure the title to the lots in the plaintiff. The only employment of the defendant alleged in the complaint is, to obtain a conveyance from a third person pf the premises in question, which, it is alleged, he accomplished ; and then avers that Cowles, being such attorney and counselor of the plaintiff in the premises, promised as before stated. It is true, that after the bid made by the defendant, the complaint alleges that he assured the plaintiff that he was perfectly secure in collecting his said judgment, and that the defendant would see that the lots should be redeemed and moneys in his hands applied for the purpose; but this is far different from a general retainer of the defendant to do every thing necessary to collect the plaintiff’s judgment; and finally, it is nowhere alleged in the complaint that the defendant undertook, or was retained or induced the plaintiff to believe that the defendant would procure the title to the lots in him, but only that, as before stated, assured him that he would see that the premises sold should be redeemed under the plaintiff’s judgment. *471 Such Referee has also found further, that the act of the defendant, Cowles, in inducing the plaintiff to keep away from said sale, was fraudulent, and a breach of his duty as such attorney and counsel, that is, to collect the amount due on such judgment, which is the only professional capacity alleged in the report. From these considerations, it clearly appears that the acquisition of the Sheriff’s certificate by the defendant, on the sale upon execution, was no violation of any undertaking or duty of his, and that if so considered by the Referee, it was error, for which the judgment ought to be reversed.
Hor will it be found that these considerations are immaterial upon the main questions of the capacity in which Cowles acted after he acquired the title, the damages to which the plaintiff might be entitled against him, and the allowances and offsets to be made to him. If, before the purchase by him, he undertook, both at the sale and subsequently, to act as the plaintiff’s attorney and counsel, to secure the amount due on his judgment, or, as an individual, undertook to vest the title to the land in the plaintiff, it would be, manifestly, far different from acting in his professional capacity, or promising, after the sale, to redeem the lots. A retainer or promise, after the defendant became trustee of his other client, the Housatonic Bank, is far different from agreeing to favor the plaintiff to their prejudice before. The defendant, being such trustee, with the knowledge of the plaintiff, and bound to act for their interests in either facilitating or defeating a redemption, could not assume to act as counsel for the plaintiff in thwarting his clients’ interest; nor, however honestly he might intend to act, could he assume the double position of agent for antagonistic interests. Indeed, it appears by a letter of the defendant, produced by the plaintiff, dated in December, 1854, that the property was worth more than the bid; so that it was against the Bank’s interest to submit to a redemption. Ho right could arise to the plaintiff from such an illegal agreement, nor could he claim for damages for its violation.
Considering, then, the defendant to be trustee for the Housatonic Bank on the purchase by him at the Sheriff’s sale, (for I hold that no notice by. him to them was necessary,) without any breach of duty on his part to the plaintiff, it remains to be seen what were the subsequent relations of the parties. And here *472 we find that various communications pass between them, until the time of redemption went by, all of which assume that the plaintiff is to redeem; and it may be that, considering the previous relations of the parties, although the plaintiff may have no right of action for damages against the defendant, from any agreement on the part of the latter to act as his counsel to the prejudice of a client for whom he already had undertaken to act, he may have been induced to believe by the latter that he could so act, and been substantially so advised by him as counsel, and may be entitled to regain from the latter anything which he lost by relying on such advice, as in the case of Ford v. Harrington, (16 N. Y. R., 285;) but, in such case, the plaintiff would have no superior right to that which he now derives from the agreement contained in the letter of the defendant of the 12th of March, 1855, to convey to the plaintiff the premises in question, in which he says: “ The Sheriff’s deed is not due until the last part of June, although the owner has to redeem in twelve months. I shall, of course, let you have it at the end of fifteen months;” and although the property is not described, the previous letters and communications of the parties determine it. This becomes, then, an action for the specific performance of a contract, and is to be governed by the same rules as any other similar action.
A difficulty presents itself from the fact that the complaint does not allege any sale or disposition of the premises, but demands, as relief, only that they should be conveyed to the plaintiff. If the damages given by the Referee were for the defendant’s failing to buy the property for the plaintiff at the Sheriff’s sale, after undertaking to do so, they would be proper, because the plaintiff would then have lost all claim to the property; but neither the complaint nor the Referee’s report proceeds on any such basis, but entirely on the principle that the defendant, having got into his possession property to which the plaintiff was entitled, and which he could convey to him, was bound to do so. There is no fraud alleged in the complaint, on the part of Cowles, except that of inducing the plaintiff to believe that he would do all that was necessary to secure the plaintiff, and that it would not be necessary for him to take any action to redeem the premises to the end that the title might be perfected in himself or the Bank; but no such fraud is found by the Referee. He only *473 finds, among other acts, that the acts of the defendant, Cowles, in inducing the plaintiff not to attend to the redemption of the premises, were fraudulent. Perhaps, by a forced construction, “ not to attend to the redemption,” and “ to believe a redemption to be unnecessary,” may be made to mean the same thing; but, on a charge of fraud, the finding should be more exactly conformable to the issue. As, therefore, there is no material charge of fraud sustained, I do not think the plaintiff had a right to elect to recover damages instead of the land, particularly when the relief demanded by him is only the latter. It is true the Referee has found that the land was sold, but this was not upon any issue, and no evidence of it was admissible upon an issue not found. For this reason, upon the present state of the pleadings, I think the finding of the Referee was erroneous.
I do not deem it necessary, in my view of this case, to examine the accounts between the parties in order to determine whether the defendant had sufficient money of the plaintiff’s in his hands to redeem; because he was bound to convey, on receiving the bid and interest and expenses, at any time, as if the property had been redeemed. Such accounts may be important on-a question of damages, hereafter.
I concur, therefore, in the judgment of reversal, and a new trial, with costs to abide the event.
Ordered accordingly.